*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellant,

v

CHARLES WAYNE DAWSON,

Defendant-Appellee.

UNPUBLISHED
November 9, 2023

No. 362919
Wayne Circuit Court
LC No. 09-004754-01-FC

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellant,

v

CHARLES WAYNE DAWSON,

Defendant-Appellee.

No. 362920
Wayne Circuit Court
LC No. 09-004756-01-FC

Before: HOOD, P.J., and SHAPIRO and YATES, JJ.

HOOD, P.J. (*concurring*).

I agree with the analysis and conclusions in the majority opinion. I write separately because this case highlights the insurmountable difficulty that postconviction movants, like Dawson, face when their claims involve a combination of legal innocence and ineffective assistance of counsel. I ultimately agree with the majority because Dawson did not present sufficient evidence to establish that he did not possess a *real* firearm for the two 2009 robberies. But I question whether it would even be possible for a litigant in this circumstance to present sufficient evidence to prove a negative, as Dawson is required. (Put another way, I question how Dawson could prove that he never possessed a real gun.) This is particularly concerning here where it does not appear the trial court ever required the prosecution to present evidence of the affirmative: that the "weapon" or "firearm" at issue was real. Not at trial. And not at the plea colloquy. This has resulted in the unusual—and troubling—outcome of holding a criminal defendant to a higher burden of proof

than the prosecution. The trial court that presided over Dawson's pleas, sentencing, and postconviction procedures seems to have recognized this inversion and granted relief by vacating the felony-firearm and felon-in-possession convictions and sentences. Nonetheless, as the majority correctly states our current postconviction procedures require a different outcome, so I am bound to agree with the majority conclusion.

## I. BACKGROUND

The majority opinion accurately describes the factual and procedural background of this case. Generally, this appeal deals with (1) evidence presented prior to conviction establishing that Dawson used a real firearm during two robberies in 2009 and (2) evidence presented postconviction proving the negative: that he did not possess a real firearm.

Critically, during the pretrial phase of Dawson's cases, there was little direct or high-confidence circumstantial evidence that Dawson possessed a real firearm during the robberies. Of the three robberies, the prosecution team never recovered a real firearm, but recovered two replica firearms: a toy and a BB gun. After the 2008 Speedway robbery, the police recovered a toy silver revolver from Dawson during a traffic stop. When the police arrested Dawson in his home 17 days after the third and final robbery in this series, the police found what they described as a "BB, PELLET OR GAS-POWERED GUN – BLACK/SILVER IN COLOR CO2 FACSIMILE FIREARM." Dawson pleaded guilty, so our universe of facts is largely limited to the substance of his plea colloquies. During his plea colloquy in Case No. 08-010037-01-FC (the 2008 robbery), before the 2009 arrest and recovery of the BB gun, Dawson specifically stated he used a "toy gun" to commit the 2008 robbery. After failing to appear for sentencing on the 2008 robbery, Dawson committed two armed robberies in 2009, one at a Radio Shack (Case No. 09-004754-01-FC), one at a Game Stop (Case No. 09-004756-01-FC). Again, the only "firearm" recovered was a BB gun recovered during his arrest nearly three weeks after the last robbery.

Dawson never explicitly admitted to possessing a real firearm. The court held a joint plea hearing for the 2009 robberies. When establishing a factual basis for the Radio Shack robbery, Dawson admitted to possessing a weapon. When asked if his prior conviction for a felony (attempted carrying a concealed weapon) made him not "eligible to possess that weapon," Dawson confirmed he was ineligible, but there was never a question as to whether the weapon was a gun let alone a real gun.[1] For the factual basis for the Game Stop robbery, the prosecutor asked if Dawson used a "gun" and showed it to take items from the store. Again, the prosecutor confirmed that Dawson had a prior felony conviction meaning he did not have a right to possess a "firearm." But again, neither the lawyers nor the court inquired whether the "gun" or "firearm" was actually a real firearm.

---

[1] Dawson's knowledge of his disability on ineligibility to possess a *real* firearm is not an element of either felony-firearm or felon-in-possession. On the other hand, possession of a real firearm is an element of both charges.

A different lawyer represented Dawson at the sentencing hearing than who had represented him at the plea hearings and other pretrial proceedings.[2]  In the presentence investigation report, the report writer memorialized Dawson's description of the offenses as follows:

> "The defendant states th[e] following regarding his involvement in all of the above offenses: I was trying to get a house.  We were going through a loss of our parental rights on my daughter.  I started using cocaine and Ecstasy.  *I had a toy gun and I robbed some places.*

The statement is followed by a representation of an electronic signature "/s/Charles Wayne Dawson."  The normal process for obtaining a defendant's statement for a presentence investigation report involves a probation agent interviewing the defendant outside of the court's presence, sometimes with counsel present, and sometimes without.

At the sentencing hearing, Dawson's stand-in counsel attempted "clear up" what to him appeared to be an obvious discrepancy between this statement and an acceptable factual basis at the plea colloquy.  Dawson's counsel brought to the court's attention that Dawson's description of the offense "indicated he had a toy gun and robbed some places."  Then there was the following exchange:

> *Mr. Lankford*:  I discuss this because obviously he wouldn't be able to plead to felony[-]firearm on two cases.  I think there was confusion perhaps on the part of the writer [of the PSIR].  The '08 case at the Game Stop [sic] in Livonia was, in fact, a look-alike, a toy gun.  The Livonia police subsequently arrested him and it was clear that they found marked money and there was a look-alike, a toy gun.  And in that case, he is not charged with felony[-]firearm for that reason.
>
> However, as to the other two cases, the Game Stop and the Radio Shack, I discussed it with him, at the time of the plea, I believe there was a statement made, looking at the plea forms, that in summarizing would have said "I robbed a person, I was armed at the time, that the instrument I was armed with was, in fact, a gun and I have a prior felony, specifically a prior carrying [a] concealed weapon, rendering me ineligible to have a firearm.["]
>
> I believe that that is a summary of what Mr. Dawson must have said at the time of the plea. . . .  In discussing it with Mr. Dawson, he wishes to clear up that confusion and clarify that an[d] re-confirm [sic] what he said at the time of the plea.
>
> Is that correct, Mr. Dawson?
>
> *Defendant Dawson*:  Yes.

---

[2] Attorney Mark Procida appears to have represented Dawson throughout the majority of the pretrial proceedings including the plea hearing for the 2019 robberies.  Attorney David Lankford represented Dawson at sentencing, standing in for Procida with Dawson's consent.

Although the majority describes this exchange at sentencing as defense counsel clarifying the record and Dawson himself confirming "that he did use an actual firearm during the 2009 offenses, as opposed to the 2008 robbery," I am not so sure. It is unclear what Dawson was saying "yes" to. If he was saying "yes" that he was reconfirming what he said at the time of the plea, then he did not admit or ratify the idea that he had a real gun. If he was saying "yes" to Attorney Lankford's second attempt at a more complete plea colloquy, then he was. The fact that stand-in counsel stated that he possessed a toy gun at the Game Stop robbery in 2008, an apparent jumble of the 2008 Speedway robbery and the 2009 Game Stop robbery only amplifies the ambiguity of Dawson's answer. I agree with the majority that Lankford understood the importance of using a real gun, and I acknowledge that he seems to have assumed that any acceptable plea colloquy necessarily would have clarified that the gun was real. But that assumption is not rooted in Dawson's statements at the plea colloquy as reflected in the transcripts.

I otherwise agree with the majority's description of the background of this case including the critical facts that Dawson did not call either Attorney Procida or Attorney Lankford at the evidentiary hearing, and he did not testify or submit an affidavit stating that he did not possess a real firearm.

## II. LAW AND ANALYSIS

I agree with the majority's conclusion that Dawson has not presented sufficient evidence establishing actual prejudice. I disagree with the majority's conclusion that there was not a "significant possibility" of actual innocence related to the felony-firearm and felon-in-possession charges.

At the outset, I agree with the majority that the appropriate lens for this case is MCR 6.508(D)(3) as opposed to MCR 6.508(D)(2). But "[t]he court may waive the 'good cause' requirement of subrule (D)(3)(a) if it concludes that there is a significant possibility that the defendant is innocent of the crime." MCR 6.508(D)(3). If the court finds good cause or waives the requirement, the defendant must still demonstrate "actual prejudice." MCR 6.508(D)(3)(b). For a defendant, like Dawson, who pleads guilty, "actual prejudice" requires the defendant to show "the defect in the proceedings was such that it renders the plea an involuntary one to a degree that it would be manifestly unjust to allow the conviction to stand[.]" MCR 6.508(D)(3)(b)(*ii*). Alternatively, "in any case," actual prejudice may be shown if "the irregularity was so offensive to the maintenance of a sound judicial process that the conviction should not be allowed to stand regardless of its effect on the outcome of the case[.]" MCR 6.508(D)(3)(b)(*iii*).

Here, there is a significant possibility that Dawson did not possess a real firearm during any of the robberies. By extension, there is a significant possibility that he is legally innocent of felon in possession of a firearm and felony-firearm. Unlike armed robbery, both felony-firearm, MCL 750.227b, and felon-in-possession, MCL 750.224(f), require proof that the defendant possessed a real firearm. *People v Perkins*, 473 Mich 626, 636; 703 NW2d 448 (2005) (relating to felon-in-possession); *People v Mitchell*, 456 Mich 693, 698; 575 NW2d 283 (1998) (relating to felony-firearm). See also 750.222(e) (defining "[f]irearm" as "any weapon which will, is designed to, or may readily be converted to expel a projectile by action of an explosive"). Acknowledging that in our current posture, the burden is on Dawson to establish that he did not possess a real firearm, rather than on the prosecution to establish that he did possess a real firearm, the trial court

-4-

could reasonably look to the body of evidence before it. I disagree with the majority's conclusion that Dawson presented no evidence. Admittedly, his evidence is circumstantial. Dawson consistently stated that he possessed a toy gun. This included his statement in the PSIR. Neither of the plea colloquies included an admission that Dawson used a real gun. These robberies were part of an apparent spree in which Dawson used similar tactics. The 2008 robbery involved a toy gun. Shortly after the 2009 robberies, during his arrest, police seized a BB gun close to Dawson's person. They never recovered a real gun. The admissions in Dawson's plea colloquy are ambiguous. Although circumstantial, there was enough evidence for the trial court to conclude that there was a significant possibility that Dawson was legally innocent of felony-firearm and felon-in-possession.

The trial court appears to have relied on this circumstantial evidence in granting the motion for relief from judgment. But our postconviction procedures require more. See MCR 6.508(D)(3)(b). Under our postconviction procedures, a significant possibility of innocence is not enough. A defendant-movant also must show actual prejudice. See *id*. I agree with the majority that Dawson has not made that showing.

But what would that look like for someone like Dawson? To the extent that he relies on ineffective assistance of counsel, Dawson must show that his trial counsel did not understand or did not explain the significance of the prosecution's burden of proving beyond a reasonable doubt that he possessed a real firearm during the robberies in order to prove the felony-firearm charges. He would also have to show that this failure affected his decision to plead guilty. Did counsel discuss the option to pleading as charged to armed robbery and electing to go to trial on felony-firearm and felon-in-possession? Was there a strategic decision? Did Dawson intend to admit to possessing a real firearm (even if he did not) because the *Cobbs* evaluation was appealing enough? These are questions that Dawson could have answered by calling his trial counsel as a witness. It is unclear why he chose not to.

To the extent that Dawson relies on actual innocence, the question of sufficient proof is much harder. Dawson would have to prove that the instruments he possessed and used during the 2009 robberies were not real firearms. The universe of facts available to this Court create reasonable questions about whether Dawson possessed a real gun, but only when the burden is on the prosecution to prove the elements in the affirmative. With a postconviction motion, Dawson bears the burden of establishing that he did not possess a real firearm. He could have submitted an affidavit or even have testified at the evidentiary hearing. It is possible that the trial court or this Court would disregard the affidavit as a self-serving contradiction of the ambiguous statements in his plea colloquy, but it would at least be more than what we have on the current record to meet the standard in MCR 6.508(D)(3)(b).

## III. CONCLUSION

It is exceptionally rare for a trial court to grant a motion for relief from judgment. Our postconviction procedures and the posture of this case put us in the position of reversing one of these rare grants. There was not high-confidence evidence at the plea colloquy—let alone at a trial—that Dawson possessed a real firearm. There was evidence in the record that Dawson used a fake gun for the 2009 robberies in addition to the 2008 robbery. Without imposing the burden

on the prosecution to present, and the trial court to accept, that evidence prior to conviction, the burden is now on Dawson to refute it.  He has not met this burden.

For the reasons stated above, I agree with the outcome of the majority opinion.


/s/ Noah P. Hood